UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRELL AVERHART,

                      Plaintiff,

- against -

ANTHONY J. ANNUCCI, Acting Commissioner of the New York State Department of Corrections and Community Supervision; Bureau Chief MARK PARKER; Senior Parole Officer CLARENCE R. NELLY; and Parole Officer LINDSY OSOUNA

                      Defendants.

No. 21 Civ. 383 (NSR)

**DECLARATION OF LINDSY OSOUNA**

LINDSY OSOUNA, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

1. I am a defendant in this action. I make this declaration in opposition to Plaintiff's motion for a preliminary injunction. The information contained herein is based upon my personal knowledge and review of the records maintained by New York State Department of Corrections and Community Supervision ("DOCCS") in the regular course of business.

2. I am employed by DOCCS as a parole officer in its Queens II Community Supervision Area Office. I have been a parole officer for DOCCS since 2014.

3. As a parole officer for Queens II Community Supervision Area Office, I am responsible for the supervision of parolees assigned to Queens II area.

4. As a parole officer, I have bi-weekly meetings with parolees assigned to my caseload to assist their re-entry process and to ensure that they understand and comply with their parole board conditions.

1

5. In January of 2018, Plaintiff Tyrell Averhart (hereinafter "Plaintiff") was assigned to me for parole supervision. He was serving his post-release supervision sentence for his 2004 conviction of Rape in the First Degree pursuant to N.Y. Penal Law § 130.35 for forcibly engaging in a sexual intercourse with a fourteen-year old girl who was physically attacked prior to the sexual intercourse.

6. At that time, there was a special parole condition restricting him from having any contact with a minor who is under age 18 without the permission of the parole officer. I believe this condition was imposed by the Parole Board based on the nature of Plaintiff's underlying conviction. Plaintiff had also been classified a Level 3 Sex Offender and was subject to the Sex Assault Reform Act ("SARA").

7. Plaintiff struggled with drug use once he was released to parole supervision. He admitted to using cocaine, oxycodone, and marijuana on June 16, 2018, and on June 27, 2018, he tested positive for marijuana. This was in violation of Plaintiff's parole condition, which prohibited him from using or possessing any controlled substance without proper medical authorization.

8. Even though Plaintiff violated his parole condition, the Division of Parole of DOCCS decided not to violate his parole because he was receiving outpatient drug treatment at that time.

9. On December 11, 2018, Plaintiff had a fight with his sister, who lived with Plaintiff and Plaintiff's mother, and was kicked out of his residence. He moved to a SARA-compliant men's shelter thereafter.

10. In February of 2019, Plaintiff kept failing to report to Division of Parole as required. On February 19, 2019, Plaintiff tested positive for cocaine and marijuana, and a warrant was

issued to Plaintiff for a parole violation. On April 10, 2019, a final revocation hearing was held, and Plaintiff was "revoked and restored" to parole. This means his revocation was upheld, and his sentence was deemed time served with restoration to parole supervision.

11. In April of 2019, Plaintiff was sent to a treatment center for substance abuse treatment and anger management. In May of 2019, Plaintiff was reportedly missing appointments with the treatment center. This was in violation of the special parole condition which required him to participate in a substance abuse treatment program as directed by the parole officer. In May of 2019, Plaintiff also failed to report to the Division of Parole, as required by his parole conditions. A parole warrant was issued on May 9, 2019. On May 20, 2019, I was also notified by personnel at Plaintiff's treatment center that he tested positive for alcohol, cocaine, methadone, and Synthetic Cannabinoids-K2 ("K2"). On July 26, 2019, a final revocation hearing was held, and Plaintiff was revoked and restored to parole.

12. On August 22, 2019, Plaintiff's drug test results came back positive for cocaine.

13. On August 23, 2019, Plaintiff's daughter with his girlfriend Jazmine McKenzie, was born. I suspected that Plaintiff was physically and emotionally abusive to Jazmine McKenzie.

14. During August of 2019, the Division of Parole sent Plaintiff to Cornerstone, an in-patient treatment center, multiple times, but Plaintiff kept failing to show up for evaluations and appointments. On August 26, 2019, Plaintiff was admitted to Cornerstone, and I was told that at the time of his admission, he tested positive for oxycodone and methadone. Three days later, on August 29, 2019, I was told by a personnel at the treatment center that Plaintiff left the center after getting caught smoking K-2 in the bathroom. On August 29, 2019, Plaintiff also failed to report to the Division of Parole as required under his parole condition. On the same date, an absconder warrant was issued by the Division of Parole.

15. On September 23, 2019, a final revocation hearing was held for Plaintiff's parole revocation, his third one in 2019, and the Administrative Law Judge revoked Plaintiff's parole and sentenced him to 12 months in jail or, alternatively, to a 90-days drug treatment program.

16. Plaintiff opted for the 90 day drug treatment at Willard Drug Treatment Facility, but in December of 2019, he was removed from the facility after he was issued a misbehavior report for misconduct  He was thereafter sent to a New York State correctional facility to complete his 12 months jail sentence.

17. In December of 2019, I denied Plaintiff's request to be released to his mother's home when he completes his 12 months sentence, because his daughter was residing there and I was worried that Plaintiff would use controlled substances while he was at home and endanger the child. I was especially worried that he was using K-2, which can cause dangerous side effects such as hallucination, paranoia, and psychosis. Plaintiff's mother was sick, and I was concerned that she would not be able to control Plaintiff if he gets out of control after using controlled substance.

18. In July and August of 2020, Plaintiff proposed two addresses for him to be released to. I denied those addresses because they did not comply with SARA due to their proximity to schools. Because of his sex offender status, he cannot live in a house that is within 1000 feet of school.  I also checked a third address proposed by Plaintiff in September of 2020, but had to deny the address after visiting the home and finding that the area that Plaintiff would be residing was inhabitable. There was a strong smell of chemical fumes in the house, and I felt that it would not be safe for Plaintiff to live there. The people who were

residing in that address also indicated to me that they did not want Plaintiff to reside at the house.

19. In September of 2020, when Plaintiff's mother sent a text message indicating how she is sad that Plaintiff has not yet seen his daughter, I sent a text message in response to show that I support Plaintiff and his wellbeing and to indicate that he needs to get the proper treatment for his drug addiction and stay sober first before the Division of Parole can consider allowing him to see her.

20. In February of 2021, I had a further discussion with Bureau Chief Alan Preston regarding the condition restricting Plaintiff from seeing his child upon his release from custody. After reviewing Plaintiff's most updated file and his application requesting parental contact, we determined that the Division of Parole will not be imposing a condition restricting Plaintiff from seeing his daughter and will allow him to have supervised visits with her when he is released from custody. The Division of Parole has determined that the visitations should be supervised at the recommendation of Plaintiff's daughter's foster care agency. We do not think this is unreasonable based on Plaintiff's poor performance on parole and his substance abuse history. The Division of Parole has also determined based on the information available at this time, and subject to Plaintiff's performance on parole, that Plaintiff would be permitted to reside in his mother's home in the event that Plaintiff's daughter no longer resides in the home, or in the event Plaintiff's daughter's foster care situation changes.

21. This decision was made after speaking to personnel from the foster care agency supervising Plaintiff's daughter who indicated that Plaintiff and his daughter are not allowed to live

together in the foster home because as the biological parent, Plaintiff is not permitted by the statute to live with his child due to the child being in foster care.

22. Plaintiff is free to propose any other SARA-compliant residences, and I will continue to investigate these residences as necessary. As another avenue for release to parole supervision, Plaintiff is also currently waiting for an available shelter residence.

Dated: Queens, New York
       February 26, 2021

_____
Lindsy Osouna
Parole Officer